A. M. BUMPUS *vs.* AMERICAN CENTRAL INSURANCE COMPANY.

Androscoggin.    Opinion May 12, 1911.

*Insurance.   Fire Insurance.   Construction of Policy.*

The defendant issued to the plaintiff a policy of insurance on "his one story frame, steel roof building situated on the north side of Bridge Street, and known on the map as Thurstòn's Planing and Saw Mill, in Livermore Falls, privileged to be occupied as a Planing Mill and Job Shop." The map referred to was "Sanborn's Map," so called, made for the use of fire insurance companies and their agents. The plaintiff had two "one story frame, steel roof buildings" north of Bridge Street in Livermore Falls. In one logs were sawed and boards and dimension lumber were planed, and there was evidence that it was known at one time as Thurston's Planing and Saw Mill. The other building was used more especially as a fitting and job shop, and contained a planer, band saw and other machinery. The latter building was delineated on the map referred to, with the legend "C. H. Thurston, Saw and Planing Mill." The former building was not on the map at all.

*Held*, that the description in the policy, "building. . . known on the map as Thurston's Planing and Saw Mill" must be construed to refer to the building that was on the map, and not to the building that was not on the map, and that the verdict of the jury which awarded damages for the loss of the building not on the map is not sustainable, as a matter of law.

On motion by defendant.   Sustained unless remittitur be made.

Assumpsit on a policy of fire insurance.   Plea, the general issue. Verdict for plaintiff for $532.95.   Defendant filed a general motion for a new trial.

The case is stated in the opinion.

*McGillicuddy & Morey*, for plaintiff.

*I. B. Clary*, and *Newell & Skelton*, for defendant.

SITTING:   EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

SAVAGE, J.   In this action on a fire insurance policy, the only question submitted to the jury, and the only one now to be considered

by the court upon the defendant's motion for a new trial, is, which one of the plaintiff's two mill buildings was covered by the policy?

The property of the plaintiff which was insured is described in the policy as "his one story frame, steel roof building situated on the north side of Bridge Street, and known on the map as Thurston's Planing and Saw Mill, in Livermore Falls, Maine, privileged to be occupied as a Planing Mill and Job Shop."

The plaintiff had two "one story frame, steel roof" buildings situated north of Bridge Street in Livermore Falls, about fifty feet from each other, and both were used for various kinds of mill purposes. The one which was destroyed by fire had a circular saw, a butter, a planer for boards and lumber, a shingle machine and a lath machine. In this mill the logs were sawed, and the boards and dimension lumber were planed, when necessary. The other building was used more especially as a fitting and job shop, and contained an edger, a moulder, a cut off saw, a surface planer, a band saw and a turning lathe. Much more planing was done in the former of the buildings above described than in the latter.

The plaintiff contended at the trial that the former building was the one covered by the policy, and introduced much evidence to the effect that that building was used as a planing and saw mill rather than the other, and was generally known as the "saw and planing mill," and "Thurston's saw mill," or "Thurston's saw and planing mill," before the plaintiff came into possession of the premises; while the other was used and known as a "job shop." If the language of the policy were ambiguous with respect to the identity of the building insured, and thus open to construction by explanatory proof of the surrounding conditions and circumstances, it cannot be said that the phrase "Thurston's Planing and Saw Mill" is not fairly descriptive of the building that was burned, and a verdict based upon that conclusion should not be disturbed.

On the other hand, the defendant contends that the policy was intended by it to cover the "job shop," so called, and not the "saw mill." And the evidence is well nigh conclusive that such was the understanding of the local agents who wrote and issued the policy.

It appears that the plaintiff had for several years carried two lines of annual policies from the same agency, one on the saw mill and one on the job shop. When old policies expired, new ones were issued in renewal, without special order, and mailed or handed to the plaintiff. The undisputed testimony is that the policy in suit was so issued in renewal of an unexpired policy on the job shop, and was sent to the plaintiff. But the plaintiff, in fact, as he says, never saw the policy until after the fire. The plaintiff, not conceding the truth of the undisputed testimony, disclaims knowledge of the course of the renewals. He relies solely upon the language of the policy. Further it appears that the New England Insurance Exchange, which regulated and controlled rates at Livermore Falls, had established an annual rate of 7.13% on the saw mill, and 6% on the job shop. The policy in suit was issued at the job shop rate, or 6%. Again, the language in the policy "privileged to be used as a planing mill and job shop" is more appropriate to the job shop than to the saw mill.

But while it is proper to state these contentions, as illustrative of the issues of fact presented to the jury, none of them are necessarily decisive of the case. It is not a question as to what kind of a contract the parties intended to make, but as to the contract they did make; not what property the defendant intended to agree to insure, but what property it did agree, by its contract, to insure. If the contract does not properly express the intention of the parties, it cannot be corrected in this suit. *Martin* v. *Smith*, 102 Maine, 27. Here the defendant can be held only if it is "so nominated in the bond." The contract being in writing, it must be construed, so far as it is unambiguous, according to the plain meaning of its terms.

Upon the face of the contract, the only ambiguity which appears is, what "map" was referred to in the expression "known on the map as Thurston's Planing and Saw Mill?" But the evidence clearly shows that the map referred to was a section of "Sanborn's map," so called, a map showing the location, shape and exposures of buildings in the congested portions of towns, and made for the use of fire insurance companies and their agents. The plaintiff's

saw mill proper did not appear on the section of the map made for Livermore Falls, which was in use at the date of the policy, but the "job shop" did appear, as shown in the following illustration :

The rectangular building on the map is, admittedly, the "job shop." The building which the plaintiff claims is the real "saw and planing mill," and which he claims was insured, lay off the lower side of the map, as reproduced above, and as already stated, it was about fifty feet from the job shop.

It will be noticed that the policy did not, in terms, insure the "Thurston Saw and Planing Mill," but a "building," "*known on the map* as Thurston's Saw and Planing Mill." And the only building to which that description can apply is the "job shop" which is designated on the map as "C. H. Thurston, saw and planing mill." In other words, the policy, by its terms, insured a building that was on the map, and not a building that was not on the map. We cannot stretch the description to a building off the map, without interpolating words which are not in the policy. To do so would be to make a contract for the parties other than the one they have made for themselves. That we cannot do.

It follows, then, that the building which was burned was not within the description in the policy, and the verdict of the jury, awarding damages for its loss, is not sustainable, as a matter of law.

By a stipulation filed before the trial, the parties agreed that if the building destroyed was the one which the plaintiff claims was

insured, the damages should be $500, the amount of the policy; but that if the policy applied to the building which the defendant claims was insured, the damages should be $75, without costs.

Accordingly the certificate will be,

> *If the plaintiff, within thirty days after the certificate of decision is received by the clerk, shall remit all of the verdict in excess of $75, motion for a new trial over-ruled; otherwise, motion sustained.*